1
2
3
4
5
6
7
8                      UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   BMO HARRIS BANK, N.A.,                   No.  1:19-cv-00140-DAD-EPG

12                  Plaintiff,

13        v.                                  ORDER GRANTING PLAINTIFF'S MOTION
                                              FOR SUMMARY JUDGMENT AND
14   BILLAN-PAHAL CORPORATION, et al.,        CLOSING THIS CASE

15                  Defendant.                (Doc. No. 53)

16

17           This matter is before the court on plaintiff's unopposed motion filed on March 25, 2021

18   seeking summary judgment in its favor as to its claims asserted in counts I and IV of its complaint

19   against defendant Bhanjo Pahal.  (Doc. No. 53.)[1]  Pursuant to General Order No. 617 addressing

20   the public health emergency posed by the COVID-19 pandemic, plaintiff's motion was taken

21   under submission on the papers.  (Doc. No. 58.)  However, after defendant failed to timely file an

22   _____

23   [1]  The undersigned apologizes for the excessive delay in the issuance of this order.  This court's
     overwhelming caseload has been well publicized and the long-standing lack of judicial resources
24   in this district long-ago reached crisis proportion.  While that situation was partially addressed by
     the U.S. Senate's confirmation of a district judge for one of this court's vacancies on December
25   17, 2021, another vacancy on this court with only six authorized district judge positions was
     created on April 17, 2022.  For over twenty-two months the undersigned was left presiding over
26   approximately 1,300 civil cases and criminal matters involving 735 defendants.  That situation
     resulted in the court not being able to issue orders in submitted civil matters within an acceptable
27   period of time and continues even now as the undersigned works through the predictable backlog.
     This has been frustrating to the court, which fully realizes how incredibly frustrating it is to the
28   parties and their counsel.

                                             1

1   opposition or statement of non-opposition to the pending motion pursuant to Local Rule 230(c),

2   the court set the motion for a hearing on April 12, 2022, at which counsel for both plaintiff and

3   defendant appeared.  (*See* Doc. Nos. 60, 61.)  After that hearing, on April 21, 2022, counsel for

4   defendant Bhanjo Pahal filed a statement of non-opposition to the pending motion for summary

5   judgment and confirmed that defendant had been advised that the motion sought entry of

6   judgment against her in an amount in excess of $1,305,140.09.  (Doc. No. 62.)  For the reasons

7   explained below, the court will grant plaintiff's motion for summary judgment.

8                                                  **BACKGROUND**

9   **A.       Procedural Background**

10          On March 26, 2019, plaintiff filed the operative first amended complaint ("FAC") in this

11   action, with an amended exhibit thereto filed on October 2, 2019.  (Doc. Nos. 5, 18.)  The FAC

12   asserts various breach of contract claims against Billan-Pahal Corporation and three individuals,

13   Gurdeep Billan, Ranjodh Billan, and Bhajno Pahal.  (Doc. No. 5 at 1.)  On November 8, 2019,

14   plaintiff filed a notice of voluntary dismissal without prejudice as to named defendants Billan-

15   Pahal Corporation, Gurdeep Billan, and Ranjodh Billan after each of those defendants filed for

16   bankruptcy in the United States Bankruptcy Court for the Eastern District of California.  (Doc.

17   Nos. 13 at 1; 14 at 1; 15 at 1; 19.)  On November 13, 2019, defendants Billan-Pahal Corporation,

18   Gurdeep Billan, and Ranjodh Billan were terminated as defendants in this action without

19   prejudice in light of the filing of the notice of dismissal.  (Doc. No. 23 at 1.)  Accordingly,

20   defendant Bhanjo Pahal is the only remaining defendant in this action and plaintiff's two claims

21   for breach of contract asserted against defendant Bhanjo Pahal are the only remaining claims.

22   (*See* Doc. No. 5 at 19, 21.)

23          On March 25, 2021, plaintiff filed the pending motion, seeking summary judgment in its

24   favor and against defendant Bhanjo Pahal "in the amount of $1,305,140.09 as of January 22,

25   2022, plus interest accruing on the principal amount at the rate of $392.65 per diem from January

26   22, 2021, plus attorneys' fees and expenses."  (Doc. No. 53.)  As noted above, counsel on behalf

27   of defendant Bhanjo Pahal filed a statement of non-opposition to the pending motion for

28   summary judgment on April 21, 2022.  (Doc. No. 62.)

1   **B.    Factual Background**[2]

2          In October 2012, defendant Bhanjo Pahal along with the now dismissed co-defendants and

3   non-party General Electric Capital Corporation ("GECC") entered into the first of several loan

4   agreements, whereby GECC agreed to finance the purchase of equipment for use in defendant's

5   business.  (UF ¶ 1.)  Over the course of the next year, defendant Pahal entered into four additional

6   loan agreements with GECC, with defendant Bhanjo Pahal's total repayment obligations under

7   these five agreements ranging in amounts from $72,347.40 to $192,058.20.  (UF ¶¶ 1–5.)  In

8   October 2015, defendant Bhanjo Pahal entered into a total of six loan agreements with non-party

9   Transportation Truck and Trailer Solutions, LLC ("TTTS"), whereby TTTS agreed to finance

10  defendant's purchase of equipment for use in defendant's business.  (UF ¶¶ 6–11.)  The amount

11  of defendant's loan obligations under each of these six agreements was $42,213.60.  (UF ¶¶ 6–

12  11.)  Defendant Bhanjo Pahal's total loan obligations under these eleven agreements (collectively,

13  the "Pahal Loan Agreements") totaled $861,097.80.  (*See* UF ¶¶ 1–11.)

14         In November 2014, defendant Bhanjo Pahal served as a guarantor on six loan agreements

15  between non-party GE Capital Commercial Inc. ("GECCI") and Billan-Pahal Corporation,

16  whereby GECCI agreed to finance Billan-Pahal Corporation's purchase of equipment for use in

17  its business.  (UF ¶¶ 12–17, 23.)  Similarly, in October 2015, defendant Bhanjo Pahal served as a

18  guarantor on four loan agreements between TTTS and Gurdeep Billan, whereby TTTS agreed to

19  finance Bhanjo Billan's purchase of equipment for use in Billan's business.  (UF ¶¶ 18–21.)

20  Under these agreements, defendant Bhanjo Pahal guaranteed Billan-Pahal Corporation's and

21  Billan's "full and timely performance of all their present and future liabilities to, among others,

22  GECC, GECCI, TTTS, and their respective successors and assigns."  (UF ¶ 22.)  The loan

23  obligations on these ten agreements (collectively, the "Pahal Guaranties") ranged from

24  $87,242.40 to $197,445.60, with a total guaranty obligation of $1,860,636.  (*See* UF ¶¶ 12–21.)

25  ───────────────────

26  [2]  The relevant facts that follow are derived primarily from plaintiff's statement of undisputed
    facts (Doc. No. 54 ("UF")).  In her statement of non-opposition to the pending motion, defendant
27  did not admit or dispute any of the facts plaintiff proffered.  (*See* Doc. No. 62.)  Due to
    defendant's non-opposition to the pending motion, the facts in this section are treated as
28  undisputed for purposes of resolution of the pending motion.  *See* Fed. R. Civ. P. 56(e).

In December 2015, GECC, GECCI, and TTTS transferred and assigned to plaintiff all their rights under the accounts associated with defendant Bhanjo Pahal, Billan-Pahal Corporation, and Gurdeep Billan. (UF ¶ 23.) In February 2016, plaintiff, defendant Bhanjo Pahal, Billan-Pahal Corporation, and Gurdeep Billan entered into twenty-one modification agreements modifying the terms of the loan agreements underlying the Pahal Loan Agreements and Pahal Guaranties (collectively, the "Agreements"). (UF ¶ 24.)

The terms of the Agreements specify that failure to make a payment when due is considered an event of default. (UF ¶ 25.) In the event of default, plaintiff may accelerate amounts due and may take possession of the property underlying the agreements and sell them in a commercially reasonable manner to pay down the balance remaining on the accounts. (UF ¶¶ 28, 35.) In addition, in the event of default under the Agreements, defendant is obligated to pay: late charges and other fees; interest at the contract rate on any amounts due; plaintiff's expenses associated with the retaking and resale of the property underlying the agreements; heightened "default" interest on unpaid amounts at a rate of eighteen percent (18%) per year or the maximum rate permitted by law; and plaintiff's attorneys' fees and costs associated with enforcing its rights under the agreements. (UF ¶¶ 32–34, 36, 38.)

As of the date of plaintiff's motion, all twenty-one agreements in the Pahal Loan Agreements and Pahal Guaranties are in default, without any payments having been made since January and February 2017. (UF ¶¶ 26–27.) Prior to filing this action, plaintiff took possession of the vehicles that were the subject of the Pahal Loan Agreements and Pahal Guaranties and sold each vehicle "in a commercially reasonable manner[] and credited the net proceeds of each sale to the amounts due and owing under the Agreements," but each of the twenty-one agreements still reflected an outstanding balance owed to plaintiff. (UF ¶ 29.) On May 31, 2018, "[p]ursuant to the terms of the Agreements, Plaintiff elected to accelerate the entire amounts due," which totaled $785,332.60 in principal and $134,617.81 in unpaid late charges, fees, interest at the contract rate, and costs of collection. (UF ¶¶ 30–35.) From May 31, 2018 through February 5, 2021, the amount of accrued and unpaid default interest due under the agreements was $385,189.65. (UF ¶ 37.) After applying the proceeds of the sale or other disposition of the vehicles underlying the

Agreements, the amount due and owing on the agreements as of February 5, 2021, excluding attorneys' fees and expenses, was approximately $1,305,140.09.  (UF ¶ 40.)

Plaintiff has made demand upon defendant Bhanjo Pahal to pay the amounts due under the Agreements, and on December 28, 2018, plaintiff, through counsel, made its final demand on defendant that she pay the amounts due under the agreements.  (UF ¶¶ 41–42.)  Nonetheless, defendant Bhanjo Pahal has "failed and refused to pay the amount due and owing."  (UF ¶ 43.)

## LEGAL STANDARD

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

In summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact."  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(A), (B).  "A trial court can only consider admissible evidence in ruling on a motion for summary judgment."  *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  However, "[a] district court may not grant an unopposed motion for summary judgment solely because the opposing party has failed to file an opposition."  *Canal Ins. Co. v. YMV Transp., Inc.*, 867 F. Supp. 2d 1099, 1103–04 (W.D. Wash. 2011); *see also Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993) ("A local rule that requires the entry of summary judgment simply because no papers opposing the

5

1  motion are filed or served, and without regard to whether genuine issues of material fact exist,

2  would be inconsistent with Rule 56, hence impermissible under Rule 83."); *White by White v.*

3  *Pierce County*, 797 F.2d 812, 815 (9th Cir. 1986) ("Even in the absence of opposing affidavits,

4  summary judgment is inappropriate where the movant's papers are insufficient on their face.").

5  **DISCUSSION**

6  As described above, plaintiff moves for summary judgment as to the two remaining

7  claims in the FAC:  (1) breach of contract against defendant Bhanjo Pahal for breach of the Pahal

8  Loan Agreements and (2) breach of contract against defendant Bhanjo Pahal for breach of the

9  Pahal Guaranties.  (Doc. No. 5 at 19, 21.)

10  As a preliminary matter, the court notes that the parties' rights and obligations under all of

11  the Pahal Loan Agreements are governed by the substantive laws of Texas as provided for in the

12  agreement.  (Doc. Nos. 55-1 at 5, 15, 24, 33, 42, 51; 55-2 at 5, 14, 23, 32, 41.)  Of the ten Pahal

13  Guaranties, four are governed by the substantive laws of Texas (Doc. No. 55-4 at 5, 14, 23, 32),

14  and six are governed by the substantive laws of Utah.  (Doc. No. 55-3 at 5, 14, 23, 32, 41, 50.)

15  **A.    Loan Agreements and Guaranties Governed by Texas Law**

16  Under Texas law, "[t]he essential elements in a suit for breach of contract are:  (1) the

17  existence of a valid contract; (2) the plaintiff performed or tendered performance; (3) the

18  defendant breached the contract; and (4) the plaintiff was damaged as a result of the breach."

19  *Bank of Tex. v. VR Elec., Inc.*, 276 S.W. 3d 671, 677 (Tex. App. 2008); *see also Smith Int'l, Inc.*

20  *v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007).

21  "The elements needed to form a valid and binding contract in Texas are well-established:

22  (1) offer, (2) acceptance in strict compliance with the offer's terms, (3) a meeting of the minds, (4)

23  consent by both parties, (5) execution and delivery, and (6) consideration."  *Doskocil Mfg. Co.,*

24  *Inc. v. Sang Nguyen*, No. 2:16-cv-00382, 2017 WL 2806322, at *3 (Tex. App. June 29, 2017); *see*

25  *also Ferrant v. Lewis Brisbois Bisgaard & Smith, L.L.P.*, No. 5:19-cv-01552, 2021 WL 2963748,

26  at *3 (Tex. App. July 14, 2021).[3]  Plaintiff argues that the Agreements are valid because

27  ─────────────────

28  [3]  Citation to these unpublished Texas Court of Appeals opinions is appropriate pursuant to Tex. R. App. P. 47.7(b).

1    defendant "executed the [Pahal] Loan Agreements, and monies were advanced per those

2    agreements." (Doc. No. 56 at 4.)  In support of its motion for summary judgment, plaintiff have

3    attached defendant's responses to plaintiff's special interrogatories, in which defendant stated that

4    plaintiff "knew that [defendant] only reads, writes and speaks Punjabi but failed to provide an

5    agreement to [defendant] that she could read and did not provide an interpreter." (Doc. No. 54-1

6    at 5–6.)  However, plaintiff contends that it is immaterial whether defendant did not understand

7    what she was signing. (Doc. No. 56 at 3–4.)  According to plaintiff, under the law of Texas, "an

8    inability to understand English does not preclude a meeting of the minds . . . . a contract

9    signatory's inability to understand English is not a defense to contract formation." *Doskocil Mfg.*

10   *Co.*, 2017 WL 2806322, at *5; *see also In re Ledet*, No. 4:04-cv-00411, 2004 WL 2945699, at *6

11   (Tex. App. Dec. 22, 2004) ("Whether a party is illiterate or incapable of understanding English is

12   not a defense to a contract.").

13        The uncontroverted evidence presented by plaintiff on summary judgment establishes

14   that:  defendant Bhanjo Pahal signed the Agreements; plaintiff or its predecessors-in-interest

15   advanced funds to defendant (and the signatories of the Pahal Guaranties) pursuant to the

16   Agreements; and defendant Bhanjo Pahal made payments toward the loan balances pursuant to at

17   least some of the Agreements. (*See, e.g.*, Doc. Nos. 55-1 at 39–46; 55-4 at 39–39.)  Thus, based

18   on the undisputed evidence before it on summary judgment, the court concludes that the

19   Agreements constitute valid contracts and that plaintiff tendered performance under the

20   Agreements.

21        As to the third element of a breach of contract claim under Texas law, "[a] breach occurs

22   when a party fails to perform a duty required by the contract." *Smith Int'l*, 490 F.3d at 387

23   (internal quotation omitted).  "[D]etermining whether a party has breached a contract is a question

24   of law for a trial court, rather than a question of fact for a jury, when the facts of the parties'

25   conduct are undisputed or conclusively established." *Kilgore Exploration, Inc. v. Apache*

26   *Corporation*, No. 1:13-cv-00347, 2015 WL 505275, at *7 (Tex. App. Feb. 5, 2015).  Here, it is

27   undisputed that defendant Bhanjo Pahal failed to make payments due under the Agreements

28   beginning in January and February 2017 and that defendant has remained in default under the

7

1   Agreements since that time.  (UF ¶ 27.)  Accordingly, the court finds that in light of the

2   undisputed evidence plaintiff has established on summary judgment that defendant Bhanjo Pahal

3   breached the Agreements.  *See, e.g.*, *Kilgore*, 2015 WL 505275, at *7–8 (finding that a party's

4   breach is "conclusively proved" when "it is undisputed that [the party] did not tender payment

5   under the" relevant contract).

6       Finally, "[a]n essential element of a breach of contract action is the existence of a causal

7   connection between the alleged breach and the damages sought."  *Castillo v. Beneficial Fin. I.*

8   *Inc.*, No. 3:13-cv-04554-M, 2017 WL 2374441, at *6 (N.D. Tex. May 15, 2017), *report and*

9   *recommendation adopted*, 2017 WL 2377952 (N.D. Tex. May 31, 2017).  Plaintiff asserts that it

10  has incurred damages due to defendant's default and continues to accrue interest on the balance

11  owed under the Agreements.  (Doc. No. 56 at 4–5.)  Indeed, it is undisputed here on summary

12  judgment that plaintiff has been damaged by defendant Bhanjo Pahal's failure to make the

13  payments due and that the parties agreed that, under the Agreements, defendant would be

14  obligated to pay heightened interest on accelerated debt as well as other fees in the event of

15  default.  (*See* UF ¶¶ 31, 36.)

16      Based on the undisputed evidence presented on summary judgment, plaintiff is entitled to

17  summary judgment in its favor on its breach of contract claims brought against defendant as to

18  the parties' agreements governed by Texas law.

19  **B.**   **Guaranties Governed by Utah Law**

20      "Under Utah Law, the elements of a claim for breach of contract are:  (1) a valid contract;

21  (2) performance by the plaintiff hereunder; (3) breach of the contract by the defendant; and (4)

22  damages to the plaintiff."  *BMO Harris Bank N.A. v. Starport Transp., Inc.*, No. 6:18-cv-03388-

23  MDH, 2019 WL 3976319, at *3 (W.D. Mo. June 11, 2019) (citing *Simmons Media Grp. v.*

24  *Waykar, LLC*, 335 P.3d 885, 890 (Utah Ct. App. 2014)).

25      Due to the similarities between the elements of a breach of contract claim under Utah and

26  Texas law, the court finds that for the same reasons that plaintiff is entitled to summary judgment

27  on its breach of contract claim as to the agreements governed by Texas law, plaintiff is likewise

28  entitled to summary judgment as to the agreements governed by Utah law.  *See also BMO Harris*

1  *Bank N.A. v. ICS 1 Ltd.*, No. 2:17-cv-00760-GCS-KAJ, 2018 WL 4680583, at *2 (S.D. Ohio

2  Sept. 28, 2018) (granting the plaintiff bank's motion for summary judgment on its breach of

3  contract claim under Utah state law where defendant defaulted on loan payments); *BMO Harris*

4  *Bank N.A. v. J-Lin Trucking, Inc.*, No. 4:17-cv-00045-JTM-JEM, 2019 WL 1332174, at *3 (N.D.

5  Ind. Mar. 25, 2019) (nothing that "[t]here is no relevant difference in the law of . . . Texas, and

6  Utah as it relates to . . . breach of contract claim[s]").

7         Accordingly, the court will grant plaintiff's motion for summary judgment.  Having

8  determined that plaintiff is entitled to judgment in its favor, the court now turns to the amount of

9  damages and the amount of attorneys' fees to be awarded.

10 **C.     Damages and Attorneys' Fees[4]**

11        1.      <u>Damages</u>

12        Plaintiff seeks damages totaling $1,486,544.36 in this case, broken down as follows:  (1)

13 $785,332.60 in principal on the twenty-one Agreements; (2) $134,617.81 in "unpaid late charges,

14 other fees, interest at the contract rate, and costs of collection"; and (3) $556,593.95 in the

15 heightened eighteen percent (18%) default interest as provided for in the Agreements.  (Doc. No.

16 68 at ¶¶ 34, 38–40, 43.)  Plaintiff has provided detailed information listing the dates of default for

17 each of the Agreements and the daily amount of default interest that has accrued on each of the

18 Agreements.  (*See, e.g.*, *id.* at ¶ 40.)  According to plaintiff's sworn declaration, these amounts are

19 accurate as of May 13, 2022.  (*Id.* at ¶ 43.)

20 /////

21

22 _____

[4]  At the April 12, 2022 hearing on the pending motion, the court expressed its concern over an
23 apparent inconsistency in the amount of damages plaintiff seeks.  In its motion, plaintiff seeks
   damages in the amount of $1,305,140.09 as of *January 22, 2021*, plus interest on the principal
24 amount at a rate of $392.65 *per diem* from that date forward.  (Doc. No. 53 at 1–2.)  However, in
   plaintiff's statement of undisputed facts, it asserts that the amount due and owing under the
25 Agreements is $1,305,140.09, calculated as of *February 5, 2021*.  (UF ¶ 40.)  Given that plaintiff
   argues that it is entitled to interest on a *per diem* basis—including on the days between January
26 22, 2021 and February 5, 2021—the identical damages figure for both dates appears to indicate
   that at least one of the amounts provided to the court is in error.  At the hearing, plaintiff's
27 counsel stated that this inconsistency was likely due to a scrivener's error.  Accordingly, the court
   directed plaintiff to file supplemental briefing regarding damages and attorneys' fees sought in
28 this case, which plaintiff did on April 29, 2022 (Doc. No. 64) and May 12, 2022.  (Doc. No. 68.)

1    In light of this record, the court finds it appropriate to award plaintiff $1,486,544.36 in

2    damages.  *See BMO Harris Bank N.A. v. BKSG Transp. LLC*, No. 1:17-cv-00586-LJO-BAM,

3    2018 WL 4297854, at *9 (E.D. Cal. Sept. 10, 2018) (awarding damages with a default interest

4    rate of 18% as specified by underlying agreements between parties governed by Texas and Utah

5    law), *report and recommendation adopted*, 2018 WL 6822614 (E.D. Cal. Sept. 27, 2018); *see*

6    *also BMO Harris Bank N.A. v. Richland Express, Inc.*, No. 2:17-cv-00149-KGB, 2018 WL

7    8299883, at *2 n.6 (E.D. Ark. Sept. 28, 2018) (concluding that the 18% interest rate was valid

8    because "Texas law does not allow contracts such as the Agreements to have an interest rate

9    greater than 18% per year" and "Utah law gives the parties freedom to agree through contract to

10   any rate of interest for a loan of goods.").

11        2.    Attorneys' Fees

12   Plaintiff also requests an award of $34,950.00 in attorneys' fees and costs in connection

13   with this action.  (Doc. No. 64 at ¶ 4.)  BMO Harris asserts that under the Agreements, defendant

14   is obligated to pay the attorneys' fees and costs incurred by plaintiff in the enforcement of its

15   rights under the Agreements.  (UF ¶ 38.)  In support of its request for attorneys' fees, BMO has

16   submitted a declaration by Christopher Miles, counsel for BMO Harris from Husch Blackwell

17   LLB, describing the attorneys' fees incurred in this action.  (Doc. No. 64.)

18   "Federal courts apply state law in determining whether to award attorneys' fees in an

19   action on a contract."  *Doan v. Singh*, No. 1:13-cv-00531-LJO-SMS, 2013 WL 5718720, at *3

20   (E.D. Cal. Oct. 18, 2013).  Ordinarily, "[a] federal court sitting in diversity applies the law of the

21   forum state regarding an award of attorneys' fees."  *Kona Enters., Inc. v. Estate of Bishop*, 229

22   F.3d 877, 883 (9th Cir. 2000).  Here, however, that analysis is less straightforward because the

23   Agreements, as described above, contain choice-of-law provisions in favor of Texas and Utah

24   law.  (*See, e.g.*, Doc. Nos. 55-1 at 15; 55-3 at 14.)  However, as to the issue of attorneys' fees, this

25   court determines that there is not a conflict between California, Texas, and Utah law.  *Compare*

26   Cal. Civ. Code. § 1717(a) ("In any action on contract, where the contract specifically provides

27   that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either

28   to one of the parties or to the prevailing party, then the party who is determined to be the party

10

1   prevailing on the contract, . . . shall be entitled to reasonable attorney's fees in addition to other

2   costs") *with* Tex. Civ. Prac. & Rem. Code § 38.001(b) ("A person may recover reasonable

3   attorney's fees from an individual or organization . . . in addition to the amount of a valid claim

4   and costs, if the claim is for . . . an oral or written contract."), *and* Utah Code Ann. § 78B-5-826

5   ("A court may award costs and attorney fees to either party that prevails in a civil action based

6   upon any promissory note, written contract, or other writing . . . when the provisions [thereof]

7   allow at least one party to recover attorney fees."); *see also Arthur Andersen & Co. v. Perry*

8   *Equip. Corp.*, 945 S.W. 2d 812, 818 (Tex. 1997) (listing factors for determining the

9   reasonableness of attorneys' fees under Texas law); *Dixie State Bank v. Bracken*, 764 P.2d 985,

10  989–90 (Utah 1988) (listing factors for determining the reasonableness of attorneys' fees under

11  Utah law); *PLCM Grp. v. Drexler*, 22 Cal. 4th 1084, 1096 (2000) (listing factors for determining

12  the reasonableness of attorneys' fees under California law).  For this reason, and in the interests

13  of judicial efficiency, the court will apply California law in addressing plaintiff's request for an

14  award of attorneys' fees.  *See Richland Express*, 2018 WL 8299883, at *9 (applying law of the

15  forum state, Arkansas, where "there is not a true conflict between Arkansas and Texas law");

16  *BKSG Transp*, 2018 WL 4297854, at *9–10 (applying California law to determine reasonableness

17  of attorneys' fees where California, Texas, and Utah law all provide for reasonable attorneys' fees

18  in connection with breach-of-contract claim), *report and recommendation adopted*, 2018 WL

19  6822614 (E.D. Cal. Sept. 27, 2018).

20          The Pahal Loan Agreements provide that

21          Debtor hereby agrees to indemnify, defend and hold harmless Lender
                and its Affiliates . . . from and against any and all losses, disputes,
22          claims, expenses (including, without limitation, legal expenses),
                damages and liabilities of whatsoever kind and nature arising out of,
23          in connection with, or relating to . . . this Agreement or any other
                document related hereto.  *If allowed by law, the legal expenses shall*
24          *include the amount of any flat fee, retainer, contingent fee or the*
                *hourly charges of any attorney retained by Lender in enforcing any*
25          *of Lender's rights hereunder or in the prosecution or defense of any*
                *litigation related to this Agreement or the transactions contemplated*
26          *by this Agreement.*

27  (*See, e.g.*, Doc. No. 55-2 at 41 (emphasis added).)  Under the Pahal Guaranties,

28  /////

                                                    11

1
2
3
4

> If the [borrower] fails to pay the indebtedness promptly as the same becomes due, or otherwise fails to perform any obligation under any of the Agreements, *each Guarantor agrees to pay on demand the entire indebtedness and all losses, costs, attorneys' fees and expenses which may be suffered by GE Capital by reason of the Company's default or the default of any Guarantor hereunder.*

5   (Doc. No. 55-4 at 38–39 (emphasis added).)   Accordingly, and in light of the court's finding that

6   plaintiff is entitled to judgment in its favor in this action, the court likewise concludes that the

7   terms of the Agreements contractually provide for an award of attorneys' fees and costs to

8   plaintiff.[5]

9   _____

10   [5]  The court notes that the attorneys' fees provision in the Pahal Loan Agreements—which is buried in a paragraph of general terms and specifically included in a provision related to indemnification—differs from contract language on which this court has previously found attorneys' fees to be warranted. *See, e.g.*, *Firstsource Solutions USA, LLC v. Tulare Reg. Med. Center*, No. 1:15-cv-01136-DAD-EPG, 2019 WL 2725336, at *3 (E.D. Cal. July 1, 2019) (finding that contract provided for attorneys' fees where the underlying agreement stated in a general terms paragraph that "[i]n the event of any default of the payment provision herein, [defendant] agrees to pay, in addition to any defaulted amount, all actual legal costs, including but not limited to, attorney fees, collection costs and court costs [plaintiff] has incurred to collect the overdue amount.").  However, based on the plain language of the provision here, and taken into consideration alongside the unambiguous attorneys' fees language contained in the Pahal Guaranties, the court sees no reason to depart from the conclusion of other courts which have held that agreements with this same exact language (with the exception of party names) validly provide for attorneys' fees.  *See, e.g.*,  *BMO Harris Bank N.A. v. CHD Transport Inc.*, No. 1:17-cv-00625-DAD-BAM, 2018 WL 4242355, at *7–8 (E.D. Cal. Sept. 6, 2018), *recommendation adopted*, 2018 WL 6822615 (E.D. Cal. Sept. 27, 2018); *Richland Express*, 2018 WL 8299883, at *9; *Starport Transportation*, 2019 WL 3976319, at *3; *see also Alki Partners, LP v. DB Fund Servs., LLC*, 4 Cal. App. 5th 574, 601–02 (Cal. Ct. App. 2016) (noting that indemnity agreements generally do not allow for the recovery of attorney fees incurred in an action for breach of contract between the parties to that agreement, but that an exception exists where the indemnity provision includes express language providing for attorneys' fees incurred in enforcing the agreement); Cal. Civ. Code § 1717(a) ("Where a contract provides for attorneys' fees . . . that provision shall be construed as applying to the entire contract . . ."); *C & C Properties v. Shell Pipeline Co.*, No. 1:14-cv-01889-DAD-JLT, 2019 WL 6341047, at *17–18 (E.D. Cal. Nov. 27, 2019) (explaining the history of the adoption of Cal. Civ. Code § 1717(a) as a response to a California Court of Appeals decision holding that an attorneys' fee provision in the contract at issue did not cover plaintiffs' specific claim) (citing *Sciarrotta v. Teaford Custom Remodeling, Inc.*, 110 Cal. App. 3d 444 (1980)).  Moreover, even if the Pahal Loan Agreements did not provide for an award of attorneys' fees upon default, "there is no logical way to separate the attorney time expended litigating" the breach of the Pahal Guaranties from that spent litigating the breach of the Pahal Loan Agreements.  *Firstsource*, 2019 WL 2725336, at *3 (declining to allocate attorney time between time spent litigating the plaintiff's claim and defending against defendant's counterclaim and finding that plaintiff may collect attorneys' fees for time expended on both fronts).

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Having determined that plaintiff is entitled to attorneys' fees, the court must next address whether plaintiff's purported fees are reasonable. *See* Cal. Civ. Code § 1717(a). The court determines the amount of reasonable attorney's fees by applying the "lodestar" method. *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001). The lodestar is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate. *Id.* "In determining reasonable hours, counsel bears the burden of submitting detailed time records justifying the hours claimed to have been expended." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986). "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), *superseded by the Prison Litigation Reform Act on other grounds*. A district court should also exclude from the lodestar fee calculation any hours that were not "reasonably expended," such as hours that are excessive, redundant, or otherwise unnecessary. *See id.* at 434; *see also J & J Sports Prods., Inc. v. Napuri*, No. 4:10-cv-04171-SBA, 2013 WL 4428573, at *1 (N.D. Cal. Aug. 15, 2013). "Next, the district court must determine a reasonable hourly rate, considering the experience, skill, and reputation of the attorney requesting fees." *J & J Sports Prods., Inc.*, 2013 WL 4428573, at *2. "The reasonable hourly rate is the rate prevailing in the community for similar work." *Gilliam v. Levine*, No. 2:18-cv-02580-PSG-MRW, 2022 WL 401462, at *4 (C.D. Cal. Jan. 25, 2022); *see also Chalmers*, 796 F.2d at 1210. "Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1205 (9th Cir. 2013).

Here, plaintiff's counsel, Husch Blackwell LLP, contends that three attorneys (a partner, a senior associate, and an associate) and two senior paralegals worked on this case, billing a total of 110.8 hours. (Doc. No. 64 at ¶¶ 5–9.) Counsel provides the total number of hours billed and the billing rate for each of those individuals as follows: the partner billed 15.6 hours at an hourly rate of $395.77; the senior associate billed 73.5 hours at an hourly rate of $327.85; the associate billed 18 hours at an hourly rate of $224.00; and the two senior paralegals collectively billed 3.7 hours at an hourly rate of $175.00. (*Id.*) Although counsel does not provide itemized billing entries for each of those individuals, counsel lists the various tasks they performed in this case, including

1    reviewing loan documents, preparing the complaint, preparing initial disclosures, preparing

2    bankruptcy notices, negotiating with defense counsel, and preparing the motion for summary

3    judgment.  (*Id.* at 10.)  Plaintiff's counsel also states that it has incurred litigation costs in the

4    amount of $1,483.64 in connection with this action, but counsel does not provide any description

5    as to these costs or itemize them.  (*Id.* at ¶ 11.)

6           The court finds that the 110.8 total hours billed in this case are reasonable in light of the

7    legal services performed here and the apparent efficiency with which the tasks were completed.

8    *See Freshko Produce Servs., Inc. v. ILA Prods., Inc.*, No. 1:19-cv-00017-DAD-BAM, 2021 WL

9    4033176, at *4 (E.D. Cal. Sept. 3, 2021) (finding that 92.3 hours was a reasonable amount of time

10   for plaintiff's counsel to have spent initiating and prosecuting a Perishable Agricultural

11   Commodities Act action and seeking an entry of default judgment).

12          Similarly, the court finds that the rates employed by plaintiffs' counsel in calculating the

13   lodestar are, for the most part, reasonable.  *See id.* (finding that hourly rates of $350 for an

14   attorney with over 30 years of experience, $250 for an attorney with seven years of experience,

15   $250 for an attorney with 3 years of experience, and $150 for a paralegal with over 30 years of

16   experience were reasonable); *C & C Properties*, 2019 WL 6341047, at *20–21 (concluding that

17   an hourly rate of $400 is appropriate for an attorney who had been practicing law for twelve years

18   "without any showing that [the attorney] had substantial relevant prior experience"; an hourly rate

19   of $500 is appropriate for an attorney who had been practicing law for twelve years and made a

20   showing of "substantial and notable prior work experience"; and an hourly rate of $300 is

21   appropriate for an attorney with "slightly more" than five years of legal experience); *Wallace v.*

22   *Nationstar Mortgage, LLC*, No. 2:18-cv-02768-JAM-DB, 2021 WL 1578196, at *4 (E.D. Cal.

23   Apr. 22, 2021) (finding that an hourly rate of $305 is reasonable for attorneys with "multiple

24   years" of relevant litigation experience).  However, given that "[c]ourts in the Eastern District of

25   California have determined that the prevailing hourly paralegal rate is 'between $75 and $150,'"

26   the court will reduce the hourly rate for the senior paralegals listed in plaintiff's counsel's

27   declaration to $150.  *Sanchez v. Saul*, No. 1:17-cv-01728-JLT, 2019 WL 2642511, at *5 (E.D.

28   Cal. June 27, 2019); *see also Wallace*, 2021 WL 1578196, at *4 (lowering the hourly rate of

14

1  paralegals to $110 per hour); *C & C Properties,* 2019 WL 6341047, at *21 (finding that an hourly

2  rate of $100 is reasonable for paralegals where no details were provided as to their levels of

3  experience).  After reducing the hourly paralegal rate, a revised lodestar calculation yields

4  $34,858.00 in attorneys' fees in this case.

5          Thus, the court concludes that the attorneys' fees incurred by plaintiff herein, including

6  the hourly rate of its counsel and total number of hours expended in this litigation, and with the

7  exception of the paralegal fees described above, are reasonable.  However, because plaintiff's

8  counsel has not provided any support for the $1,483.64 in litigation costs requested, the court will

9  decline to award the requested amount of costs in this case.  *See, e.g.*, *In re Media Vision*

10 *Technology Securities Litigation*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996) ("[T]he costs and

11 expenses incurred by counsel are subject to a test of relevance and reasonableness in amount");

12 *ICS 1 Ltd.*, 2018 WL 4680583, at *2 (declining to award attorneys' fees and costs where the

13 moving party "provide[d] no foundation" for such an award).

14

15                                 **CONCLUSION**

16        For the reasons set forth above:

17     1.     Plaintiff's motion for summary judgment (Doc. No. 53) is granted;

18     2.     The Clerk of the Court is directed to enter judgment in favor of plaintiff in the

19            amount of $1,486,544.36[6];

20 /////

21 /////

22 /////

23

24 [6]  As noted above, plaintiff argues in its motion for summary judgment that it is entitled to interest
   accruing on the principal amount at the rate of $392.65 *per diem* from early 2021 onward.  (Doc.
25 Nos. 53 at 2; 56 at 6.)  Nonetheless, despite the court's instruction to plaintiff to file supplemental
   briefing regarding the updated amounts of damages sought in this case, plaintiff did not state in its
26 amended damages declaration an updated request for *per diem* interest for any dates beyond May
   13, 2022, the date for which plaintiff provided updated damages calculations in this case.
27 Accordingly, the court declines to assess an additional *per diem* accrual of interest here—*i.e.*,
28 beyond May 13, 2022—where plaintiff has not provided the necessary support for such a request.

3.      Plaintiff is awarded $34,858.00 in attorneys' fees; and

4.      The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated:   **May 24, 2022**

_____
UNITED STATES DISTRICT JUDGE

16